UNITED STATES of America, Appellee,

v.

James J. PRICE, Appellant.

No. 74–1538.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1974.

Decided Dec. 23, 1974.

Morris D. Rosen and Klyde Robinson, Charleston, S. C. (Robert N. Rosen, Charleston, S. C., on brief), for appellant.

Thomas P. Simpson and Lionel S. Lofton, Asst. U. S. Attys. (John K. Grisso, U. S. Atty., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

PER CURIAM:

Appellant was convicted of conspiracy to extort and extortion, both involving interstate commerce, in violation of the Hobbs Act, 18 U.S.C. § 1951 (1970). He

---

asserts that the jury was improperly instructed on the definition of "extortion."[1] Rejecting this and other assignments of error, we affirm.

Price at all relevant times was Chairman of the Charleston (South Carolina) County Council. In late November 1973 the Royal Scotsman Inn Corporation was nearing completion of construction of a motel in Charleston County. Utilization of module construction, however, caused certain building code deficiencies, resulting in refusal of a certificate of final inspection and prompt issuance of an occupancy permit.

Harris, a Scotsman executive, sought immediately to resolve the occupancy permit problem. A series of meetings and conversations during the next week among Harris, Price, and Balliet, the co-conspirator, culminated in the payment by Scotsman (through Harris) of $12,000 in cash[2] to Price in exchange for the latter's assurance that the motel would obtain its occupancy permit.

■ Price asserts that since he, as County Council Chairman, had no *de jure* power to issue the occupancy permit the money was not obtained "under color of official right." After instructing the jury that "under color of official right" was a "wrongful taking by a public officer of money not due him, or his office," the trial court elaborated:

> [I]t is not necessary [for conviction] that you conclude that the defendant could in fact assure the issuance of an occupancy permit . . . . The issue . . . is not whether the defendant had the power to withhold the permit, but whether it was reasonable for [Scotsman to believe] that he . . . had such power.

Transcript at 850–851.

We hold the foregoing a correct instruction under § 1951's definition of extortion, United States v. Emalfarb, 484 F.2d 787, 789 (7th Cir.), cert. denied, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973), and that it fully applied here, where the victim's belief was predicated upon the appellant's assertion of *de facto* power over the issuance of the permit. Price told Harris before the money was exchanged that (1) there were several county employees "hanging by a thread" whose jobs would be terminated if they didn't obey appellant; (2) if Harris had asked appellant for help earlier there would have been no problems; (3) if Scotsman were to build another motel in the area, Harris should come to appellant to get "everything taken care of."

■ We reject Price's contention that guilt may be predicated only upon a further finding that he perverted the *legal* or *statutory* power (*de jure*) of his public office. It is enough that he appeared to act under § 1951(b)(2)'s "color of official right."

■ Further, we view the conviction as supportable alternatively under the § 1951(b)(2) definition of extortion relating to obtaining money with consent "induced by . . . fear," on which the jury was also instructed. There is ample evidence from which the jury could have concluded that Scotsman's fear of financial injury[3] was both reasonable and substantial. Having been refused an occupancy permit, Scotsman faced monetary loss from both the possibility of substantial reconstruction and the concomitant delay in commencing operations. That the appellant's corrupt offer played upon this apprehension was certainly inferable, if not obvious.

Accordingly, the judgment is

Affirmed.

---

1. Defined in 18 U.S.C. § 1951(b)(2):

   The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

2. What was thought by appellant to be a clandestine transaction in a warehouse ended with an on-the-scene arrest by the FBI, who had been contacted by Harris.

3. Fear of economic loss is included within the Hobbs Act. *E. g.*, United States v. Tropiano, 418 F.2d 1069, 1083 (2d Cir. 1969), cert. denied, 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970); United States v. Pranno, 385 F.2d 387 (7th Cir. 1967), cert. denied, 390 U.S. 944, 88 S.Ct. 1028, 19 L.Ed.2d 1132 (1968).