STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. THADDEUS GORA, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 6, 1976—Decided February 24, 1977.

Before Judges LORA, CRANE and MICHELS.

*Mr. Dino D. Bliablias* argued the cause for appellant (*Messrs. Stein, Bliablias, Goldman & McGuire*, attorneys; *Mr. Richard C. Serratelli*, of counsel, and *Mr. Martin F. Kronberg* on the brief).

*Mr. Lowell Espey*, Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland*, Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

MICHELS, J. A. D. During its investigation into official corruption in the City of Elizabeth, the Union County grand jury heard a series of telephone conversations taped by Joseph Oliveri which indicated that $395 had been passed by Verle Cain through Oliveri to Thaddeus Gora, a former president and member of the Elizabeth City Council, for use in fixing a traffic ticket issued to Cain. Thereafter, a six-count indictment issued against defendant Gora. Count 1 charged Gora with taking the $395 from Oliveri unlawfully and by color of his office as an illegal fee or reward for performing his duties, contrary to *N. J. S. A.* 2A:105-1. Count 2 charged that he unlawfully received a fee or reward for performing a service in regard to Cain's criminal case, in violation of

*N. J. S. A.* 2A:105–2. Count 3 charged Gora with accepting a bribe, in violation of *N. J. S. A.* 2A:93–6, and count 4 charged misconduct in office, contrary to *N. J. S. A.* 2A:85–1. Count 5 charged that defendant conspired with Cain and Oliveri (unindicted coconspirators) to commit the substantive crimes charged in the first four counts, thereby violating *N. J. S. A.* 2A:85–1 and 2A:98–1, and count 6 charged that Gora violated *N. J. S. A.* 2A:131–1 by willfully and corruptly committing perjury before the grand jury when he testified that he had never received the money from Oliveri. Defendant's pretrial motion to dismiss the indictment was denied by the trial judge, and his subsequent motions for leave to appeal from that order were denied by this court and by the Supreme Court.

Following a lengthy trial the jury found defendant guilty on all counts of the indictment. Defendant's motion for a new trial was denied. Thereafter, the trial judge merged defendant's convictions on the first three counts into count 4, misconduct in office, dismissing counts 1, 2 and 3. He was sentenced to a one to two-year State Prison term and fined $500 on count 4. A suspended one-to two-year State Prison term was imposed for the conspiracy conviction (count 5) and a concurrent one to two-year sentence was imposed for perjury (count 6). Defendant appeals, seeking a reversal on the following grounds as set forth in his brief:

POINT I — A TAPE RECORDING MADE BY OLIVERI OF GORA WAS IMPROPERLY ADMITTED INTO EVIDENCE IN VIOLATION OF THE NEW JERSEY WIRETAPPING AND ELECTRONIC SURVEILLANCE CONTROL ACT. (*N. J. S.* 2A: 156A–1 *et seq.*).

POINT II — EVEN IF THE NEW JERSEY WIRETAPPING AND ELECTRONIC SURVEILLANCE CONTROL ACT (*N. J. S.* 156A–1 *et seq.*) WAS NOT VIOLATED, THE PROPER FOUNDATION WAS NOT LAID FOR THE ADMISSIBILITY OF THE OLIVERI TAPE.

POINT III — DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL ON COUNT I AT THE END OF THE STATE'S CASE SHOULD HAVE BEEN GRANTED DUE TO THE

STATE'S FAILURE TO PROVE THAT GORA RECEIVED OR TOOK MONEY BY COLOR OF HIS OFFICE.

*POINT IV* — AS THE SAME EVIDENCE SUPPORTED THE CONVICTIONS UNDER BOTH COUNTS I & IV AND AS EXTORTION, *N. J. S.* 2A:105-1 (COUNT I) AND MISCONDUCT IN OFFICE, *N. J. S.* 2A:85-1 (COUNT IV) ARE SUBSTANTIALLY SIMILAR, A REVERSAL OF COUNT I WOULD REQUIRE A REVERSAL OF COUNT IV.

*POINT V* — DEFENDANT WAS DENIED A FAIR TRIAL AND THEREFORE IS ENTITLED TO A NEW TRIAL BECAUSE OF THE PREJUDICE RESULTING FROM:

A. THE TRIAL JUDGE'S STATEMENTS THAT S-1A WAS AN "ORIGINAL TAPE".

B. THE CHARGE AS GIVEN FAILED TO STATE THAT TO BE FOUND GUILTY OF EXTORTION, MONEY MUST HAVE BEEN RECEIVED BY GORA AS A *QUID PRO QUO*, NOT MERELY BEEN RECEIVED "IN CONNECTION WITH" THE PERFORMANCE OF HIS DUTIES. *STATE v. SAVOIE*, 67 *N. J.* 439 (1975).

*POINT VI* — THE STATE'S INTRODUCTION INTO EVIDENCE AT THE TRIAL OF GORA'S TESTIMONY BEFORE THE GRAND JURY CONSTITUTED REVERSIBLE ERROR.

*POINT VII* — THE PRETRIAL MOTION TO DISMISS THE INDICTMENT SHOULD HAVE BEEN GRANTED AS:

A. THE DEFENDANT DID NOT WAIVE HIS RIGHTS UNDER THE NEW JERSEY PUBLIC EMPLOYEE IMMUNITY STATUTE (*N. J. S.* 2A:81-17.2(a)(2), *et seq.*).

B. *STATE v. VINEGRA*, *SUPRA*, SHOULD NOT BE FOLLOWED IN THE CASE HEREIN AS *VINEGRA* DOES NOT PROVIDE FOR THE DISMISSAL OF AN INDICTMENT WHERE THE STATE FAILS TO APPRISE THE DEFENDANT PRIOR TO DEFENDANTS APPEARANCE BEFORE THE GRAND JURY OF THE SUBJECT MATTER OF ITS INVESTIGATION AND AS *VINEGRA* DOES NOT REQUIRE AN INDICTMENT TO BE DISMISSED WHERE THE STATE CALLS A DEFENDANT AS A RUSE TO OBTAIN EVIDENCE AGAINST HIM OR TO PREJUDICE HIM IN THE EYES OF THE GRAND JURY.

C. THE CONSTITUTIONAL RIGHTS OF THE DEFENDANT WERE INFRINGED UPON AS THE STATE FAILED TO ADEQUATELY INFORM THE DEFENDANT OF THE SCOPE OF ITS INVESTIGATION AT THE TIME THE DEFENDANT WAS CALLED BEFORE THE GRAND JURY.

We have carefully considered all of defendant's arguments addressed to these contentions and find, with the sole exception expressed in Point VI, *infra,* that they are without merit. *R.* 2:11-3(e)(2).

## I. Admissibility of Tape Recordings Made by Oliveri Of His Telephone Conversations With Defendant.

### A

Defendant asserts that the recording of telephone conversations by Oliveri by use of a tape recorder and special adapter attached to the telephone receiver constituted an "intercept" under *N. J. S. A.* 2A:156A–2(c), and notes that the interception of oral communications or the disclosure or use of intercepted conversations is unlawful and proscribed by *N. J. S. A.* 2A:156A–3.[1] Therefore, defendant contends, the trial judge erred in denying his motion to suppress the tapes as illegal under the New Jersey Wiretapping and Electronic Surveillance Control Act (hereinafter referred to as the State's Wiretapping Act), *N. J. S. A.* 2A:156A–1, *et seq.*

*N. J. S. A.* 2A:156A–2(c) defines the term "intercept" as "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." We are convinced that Oliveri's recording of his telephone conversations with defendant did not meet this statutory definition, and therefore, in making the recordings, Oliveri violated neither our Wiretapping Act nor the comparable provisions of the Federal Omnibus Crime Control and Safe Streets Act of

---

[1]The State's proofs at a preliminary suppression hearing showed that Oliveri had recorded 50 telephone conversations that he had with defendant between 1966 and 1969. Tapes admitted into evidence corroborated with detail Oliveri's trial testimony that defendant had received money from him to "fix" Cain's drunk driving charge before the Elizabeth Municipal Court. In essence, they showed that Oliveri and defendant had discussed Cain's arrest on a charge of drunken driving, the possibility that Gora could be of aid, and the amount of money required. Additionally, they revealed evidence of claimed continuing contacts between defendant and a municipal court judge, the disposition of Cain's case in the municipal court, and the mechanics of transferring the money.

1968. 18 *U. S. C. A.* §§ 2510(4) and 2511(1)(a) and (b). Accordingly, we affirm the order of the Law Division denying defendant's motion to suppress the Oliveri tapes substantially for the reasons expressed by Judge Davidson in his oral opinion of April 10, 1974. See *State v. Vizzini,* 115 *N. J. Super.* 97, 99–101 (App. Div. 1971). See also, *Rathbun v. United States,* 355 *U. S.* 107, 78 *S. Ct.* 161, 2 *L. Ed.* 2d 134 (1957); *United States v. Harpel,* 493 *F.* 2d 346, 350 (10 Cir. 1974); *State v. Carbone,* 38 *N. J.* 19, 26 (1962). *Cf. Lopez v. United States,* 373 *U. S.* 427, 83 *S. Ct.* 1381, 10 *L. Ed.* 2d 462 (1963).

██ Furthermore, even assuming that Oliveri's recordings were "interceptions" within the meaning of *N. J. S. A.* 2A:156A–2(c), such recordings would still not be unlawful in view of *N. J. S. A.* 2A:156A–4 which, in pertinent part, provides:

It shall not be unlawful under this act for:
* * * * * * * *

 c. A person not acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act.

*Cf. State v. Vizzini, supra,* 115 *N. J. Super.* at 102.

We deem it appropriate to point out that in affirming the trial judge's denial of defendant's suppression motion, we have considered carefully defendant's contention that the recordings should be suppressed pursuant to *N. J. S. A.* 2A:156A–21(a) as "unlawfully intercepted" because Oliveri recorded the telephone conversations for the alleged purpose of committing a criminal or tortious act. The thrust of defendant's argument, articulated in the present form for the first time on appeal, is that since Oliveri recorded his conversations with defendant (as well as others) for the purpose of eventual blackmail, the interception of

the conversations was not excepted from suppression under *N. J. S. A.* 2A:156A–4(c). Defendant relies solely upon the trial testimony of Oliveri to support this argument.

■ Preliminarily, we observe that defendant was duty-bound to present all his proofs concerning the alleged unlawfulness of the interception at the hearing on the suppression motion. He cannot now rely on evidence subsequently developed at the trial of the indictment to support his attack upon the pretrial ruling. See *State v. Jordan,* 115 *N. J. Super.* 73 (App. Div. 1971), certif. den. 59 *N. J.* 293 (1971). *Cf. State v. Wright,* 113 *N. J. Super.* 79 (App. Div. 1971), rev'd on other grounds, 61 *N. J.* 146 (1972); *State v. Gaudiosi,* 97 *N. J. Super.* 565 (App. Div. 1967). As stated by this court in *Jordan,*

> Suppression motions are required to be made and determined before trial, otherwise they are deemed waived. *R.* 3:5–7. Thus, the losing party may move before trial for leave to appeal. *R.* 2:2–4 and *R.* 2:5–6. To permit defendant to go beyond the record made on the suppression motion would destroy the purposes and the scheme of the rules. The rules contemplate a full airing of the evidence before trial. On this appeal we may only consider whether the motion to suppress was properly decided based on the evidence presented at that time. The court's decision becomes the law of the case and is binding on whatever judge ultimately tries the case. See *State v. Contursi,* 44 *N. J.* 422, 425 (1965), where defendant, at trial, attempted to renew his motion to suppress and Justice Hall, speaking for the court, said it was "very properly rejected summarily." See also *State v. Romeo,* 43 *N. J.* 188, 202 (1964), *cert.* den. 379 *U. S.* 970, 85 *S. Ct.* 668, 13 *L. Ed.* 2d 563 (1965). [115 *N. J. Super.* at 76]

Furthermore, we are satisfied that, based on the evidence presented, the trial judge properly decided the suppression motion. Beyond this, there was ample credible evidence presented at trial to reasonably warrant a finding that Oliveri's initial purpose in recording the conversations was to protect himself and not to blackmail defendant.

Finally, we find no merit in defendant's claim that the admission of the tapes in evidence violated *N. J. S. A.* 2A:156A–17 b.

## B

Defendant argues that the State failed to establish that Oliveri's tape recorder was capable of taping the conversations, that the recordings were authentic and correct, and that no changes, additions or deletions had been made on the tapes. Therefore, he contends, the tapes were admitted in evidence in violation of the standards enunciated in *State v. Driver*, 38 *N. J.* 255 (1962). *See also State v. Seefeldt*, 51 *N. J.* 472, 487 (1968); *State v. Zicarelli*, 122 *N. J. Super.* 225, 239–240 (App. Div.), certif. den. 63 *N. J.* 252 (1973), *cert.* den. 414 *U. S.* 875, 94 *S. Ct.* 71, 38 *L. Ed.* 2d 120 (1973).

We are satisfied that there was sufficient credible evidence in the record to support the findings and conclusions of the trial judge that the State had met the standards of admissibility set forth in *State v. Driver, supra*, and had laid a proper foundation for the admissibility of the tap s. *State v. Johnson*, 42 *N. J.* 146, 161–162 (1964). Accordingly, Judge Davidson did not mistakenly exercise his discretion in admitting the Oliveri tapes in evidence.

II. *Denial Of Motion For Judgment Of Acquittal On The Charge Of Unlawful Taking Of Money As A Public Officer In Violation Of N. J. S. A.* 2A:105–1.

Defendant contends that the trial judge erred in denying his motion for a judgment of acquittal as to count 1 because the State failed to prove that he took or received money "by color of his office," as required by *N. J. S. A.* 2A:105–1. Defendant argues that, as a member of the city council, his "actual duties" did not include "affecting the disposition of cases before the Municipal Court of Elizabeth," and he had

no apparent authority to "officially influence the judicial disposition of Cain's drunk driving charge."

*N. J. S. A.* 2A:105-1 provides:

Any judge, magistrate or public officer who, by color of his office, receives or takes any fee or reward not allowed by law for performing his duties, is guilty of a misdemeanor.

In order to obtain a conviction under this statute, it must be proved that defendant was (1) a public officer (2) who by color of his office (3) took money (4) not due him. *State v. Savoie,* 67 *N. J.* 439, 446-449 (1975); *State v. Weleck,* 10 *N. J.* 355, 371-372 (1952). In discussing the phrase "by color of his office," Chief Justice Vanderbilt commented:

* * *"By color of his office" means simply that the officer must have taken money not due him for the performance of his official duties. There is no requirement that the taking precede the performance of the duties, although generally in extortion such would be the case. In 1 *Burdick, Law of Crime* (1949), § 275, *p.* 395, it is stated:
"At common law, the money or other thing of value must be taken under color of office. That is, *the service rendered,* or to be rendered, *or pretended to have been rendered,* must be apparently, or pretended to be, within official power or authority, and the money must be taken in such an apparent or claimed capacity." (Italics added) [*State v. Weleck, supra,* 10 *N. J.* at 372]

This definition is still followed in New Jersey. See *State v. Savoie, supra,* 67 *N. J.* at 450.

■ Consequently, a conviction under *N. J. S. A.* 2A: 105-1 will be sustained if the proofs show that the services rendered, or to be rendered or even pretended to be rendered were "apparently, or pretended to be, within official power or authority, and the money must be taken in such an apparent or claimed capacity." It is not necessary that there be actual power or authority reposed in defendant to render such services. The distinction between actual authority and apparent authority is clearly pointed out by the Third Circuit Court of Appeals in *United States v.*

*Mazzei,* 521 *F.* 2d 639 (1975), *cert.* den. 423 *U. S.* 1014, 96 *S. Ct.* 446, 46 *L. Ed.* 2d 385 (1975). There defendant Mazzei was convicted of extorting money for the purpose of obtaining a lease under the Hobbs Act, 18 *U. S. C. A.* § 1951 (1970), which defined "extortion" to mean "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Mazzei claimed that he had no official power to grant the sought-after lease, and never pretended to have any official power in this area. The court rejected this argument, stating:

It is clear, of course, that defendant had no statutory power as a state senator to control the granting of leases by state executive agencies. But in order to find that defendant acted "under color of official right," the jury need not have concluded that he had actual *de jure* power to secure grant of the lease so long as it found that Kelly held, and defendant exploited, a reasonable belief that the state system so operated that the power in fact of defendant's office included the effective authority to determine recipients of the state leases here involved. *See United States v. Price,* 507 F. 2d 1349 (4th Cir. 1974) (per curiam); *United States v. Staszcuk, supra* (adopting by reference the panel opinion at 502 F. 2d 875 (7th Cir. 1974) on this point). Such an exploitation involves the wrongful use of official power that has long been punished at common law as extortion "under color of public office." *See, e. g., Commonwealth v. Wilson,* 30 Pa. Super. 26 (1906). The issue of Kelly's belief and its reasonableness was a jury question which was submitted under appropriate instructions. [521 *F.* 2d at 643; footnote omitted]

See also *United States v. Price,* 507 *F.* 2d 1349, 1350 (4 Cir. 1974); *United States v. Emalfarb,* 484 *F.* 2d 787, 789 (7 Cir.), *cert.* den. 414 *U. S.* 1064, 94 *S. Ct.* 571, 38 *L. Ed.* 2d 469 (1973); *State v. Dolton,* 146 *N. J. Super.* 111 (App. Div. 1977).

The standard to be applied in determining a motion for judgment of acquittal under *R.* 3:18–1 at the conclusion of the State's case is set forth in *State v. Reyes,* 50 *N. J.* 454 (1967), as follows:

[T]he broad test for determination of such an application is whether the evidence at that point is sufficient to warrant a conviction of

the charge involved. *R. R.* 3:7-6. More specifically, the question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. [at 458-459.]

See also, *State v. Mayberry*, 52 *N. J.* 413, 436-437 (1968), *cert.* den. 393 *U. S.* 1043, 89 *S. Ct.* 673, 21 *L. Ed.* 2d 593 (1969); *State v. Kluber*, 130 *N. J. Super.* 336, 341-342 (App. Div. 1974), certif. den. 67 *N. J.* 72 (1975).

The obligation of this court in reviewing the determination of such a motion by the trial judge is to consider the State's proofs in the light of the foregoing standard and to determine therefrom how the motion should have been decided. *State v. Reyes, supra; State v. Van Duyne*, 43 *N. J.* 369, 377 (1964), *cert.* den. 380 *U. S.* 987, 85 *S. Ct.* 1359, 14 *L. Ed.* 2d 279 (1965); *State v. Moffa*, 42 *N. J.* 258, 263 (1964). In our determination no consideration has been given to any evidence or reasonable inferences to be drawn therefrom adduced on defendant's case. See *State v. Reyes, supra; State v. Fiorello*, 36 *N. J.* 80, 86-91 (1961), *cert.* den. 368 *U. S.* 967, 82 *S. Ct.* 439, 7 *L. Ed.* 2d 396 (1962).

We are convinced that the evidence and the logical inferences to be drawn therefrom, considered in a light most favorable to the State at the end of its case, was sufficient for the jury — the trier of the fact — to find defendant guilty beyond a reasonable doubt of unlawfully taking or receiving money by color of his office. Accordingly, the trial court properly denied his motion for judgment of acquittal on this charge at the end of the State's case.

Furthermore, even making the dubious assumption that the trial judge erred in denying defendant's motion for acquittal, since the judge merged defendant's conviction for unlawful taking (count 1) into his conviction for misconduct in office (count 4) and dismissed the former, the alleged error was not "of such a nature as to have

been clearly capable of producing an unjust result," and therefore affords defendant no basis for relief before this court. *R.* 2:10–2.

### III. *Conviction For Misconduct In Office.*

Defendant asserts that the crimes of unlawfully taking money as a public officer (count 1) and misconduct in office (count 4) are substantially similar and that his convictions for each are supported by the same evidence. Therefore, he argues, the disposition of count 1 affects the disposition of count 4. Specifically, defendant urges that a reversal of count 1 requires reversal of the misconduct charge. Our disposition of count 1 has blunted this argument. Moreover, since the trial judge dismissed defendant's conviction for unlawfully taking money as a public officer (count 1), it has no bearing upon his conviction for misconduct in office (count 4). Even if we assume that defendant's attack upon his conviction under count 4 is directed to the failure of the trial judge to grant his motions for (1) a judgment of acquittal at the end of the State's case, and (2) a new trial, we find his claims lacking in merit.

"Misconduct in office" means "any act or omission in breach of a duty of public concern, by one who has accepted public office." 1 *Burdick, Law of Crime* (1946), § 272 at 387, quoted in *State v. Weleck, supra,* 10 *N. J.* at 365. It has also been defined as "[t]he violation of a prescribed duty to the public * * * for which the offender may be indicted at common law." *State v. Startup,* 39 *N. J. L.* 423, 425 (Sup. Ct. 1877); *State v. McFeeley,* 136 *N. J. L.* 102, 107 (Sup. Ct. 1947). See also, *State v. Furey,* 128 *N. J. Super.* 12, 17–18 (App. Div. 1974). The crime sometimes is described as the "corrupt misbehavior by an officer in the exercise of the duties of his office or while acting under color of his office." *State v. Begyn,* 34 *N. J.* 35, 49 (1961). See also, *State v. Weleck, supra,* 10 *N. J.* at 365; *State v. Cohen,* 32 *N. J.* 1, 8 (1960).

 The State's evidence and the logical inferences to be drawn from it were sufficient for a jury to find defendant guilty beyond a reasonable doubt of misconduct in office. We are also satisfied that the trial judge properly denied defendant's motion for a new trial. His conviction was not a miscarriage of justice under the law. *R.* 2:10–1.

IV. *Alleged Denial Of Fair Trial By The Trial Court's Instructions To The Jury.*

### A

 In its instructions to the jury the trial judge referred to the composite prepared from the Oliveri tapes for use at trial as the "original" tape. We find no error, let alone plain error, in this designation, since, in the context of the entire charge, no real possibility of jury confusion existed. *State v. Wilbely*, 63 *N. J.* 420, 422 (1973). Beyond this, and contrary to defendant's contention, the judge's designation did not remove the ultimate determination of the factual issues relating to the authenticity of the tapes from the jury. They were clearly left open by the court for the jury's consideration.

### B

 We also find no merit in defendant's claim that the trial judge committed plain error in defining extortion. See *N. J. S. A.* 2A:105–1. The judge fully and accurately instructed the jury on the elements of the crime, clearly excluding the possibility that the acceptance of money in a private capacity could yield criminal liability to defendant under the statute. *Cf. State v. Savoie, supra*, 67 *N. J.* at 450–451.

V. *Admissibility Of Defendant's Grand Jury Testimony.*

Defendant contends that the trial judge erred in admitting in evidence the following excerpts from his grand jury testimony:

QUESTION: Have you at any time, Mr. Gora, ever accepted any money from Mr. Oliveri? ANSWER: No, sir.

\* \* \* \* \* \* \* \*

QUESTION: But you stated in your prior testimony no money ever passed between Mr. Oliveri's hand and yours? ANSWER: No, sir.

\* \* \* \* \* \* \* \*

QUESTION: Did you ever receive any money from him? ANSWER: Not a penny.

\* \* \* \* \* \* \* \*

QUESTION BY A JUROR: But you never received any money from Mr. Oliveri? THE WITNESS: No, sir.

\* \* \* \* \* \* \* \*

Q And are these, in fact, the questions and the answers which were given to you at the Grand Jury on October 4th, 1972? A Yes, sir they are.

█ Defendant argues that this testimony was rendered inadmissible by virtue of *N. J. S. A.* 2A:81–17.2a2, which conferred a self-executing use and fruits immunity upon him. We disagree. It is clear that the statutory immunity does not protect defendant against prosecution for perjury committed when testifying before the grand jury pursuant to *N. J. S. A.* 2A:81–17.2a1. *N. J. S. A.* 2A:18–17.2 then in effect provided:

If any public employee testifies before any court, grand jury or the State Commission of Investigation, such testimony and the evidence derived therefrom shall not be used against such public employee in a subsequent criminal proceeding under the laws of this State; provided that no such public employee shall be exempt from prosecution or punishment for perjury committed while so testifying.

The only grand jury testimony of defendant admitted in evidence during the trial related to the perjury charge against him. This testimony was clearly admissible, and its use was not proscribed by *N. J. S. A.* 2A:81–17.2a2. See *State v. Mullen,* 67 *N. J.* 134, 137–138 (1975). See also, *Glickstein v. United States,* 222 *U. S.* 139, 32 *S. Ct.* 71, 56 *L. Ed.* 128 (1911); *State v. Williams,* 59 *N. J.* 493, 498–500 (1971).

 We also find no merit in the claims, raised for the first time on appeal, that the trial judge should on his own motion have severed the trial of the perjury charge from the other charges in the indictment, and that he should have conducted a hearing on his own initiative to insure that none of the trial evidence was derived from the grand jury testimony. Defendant waived any right that he may have had to a separate trial on the perjury charge by failing to object prior to trial to the joinder of all the offenses charged in the indictment. *R.* 3:10–2; *State v. Burgess,* 97 *N. J. Super.* 428, 433 (App. Div. 1967). Moreover, no showing of good cause was made which would have warranted the trial judge granting relief from the waiver to defendant. *Cf. State v. Vinegra,* 134 *N. J. Super.* 432, 441 (App. Div. 1975), leave to appeal granted 68 *N. J.* 498 (1975). The only grand jury testimony of defendant admitted in evidence was his denial that he received money from Oliveri. Such testimony was not offered to prove the other offenses charged against him and clearly its admission could not have prejudiced defendant in any way with respect to the trial of the other charges.

 Finally, we are satisfied that the trial judge did not commit error, let alone plain error, in failing to conduct a separate hearing on his own motion to determine if any illegal use had been made of defendant's grand jury testimony: that is, to insure that none of the trial evidence was derived from the testimony given by defendant before the grand jury.

Our study of the entire record, including the testimony presented before the grand jury, convinces us that the State's evidence with respect to the crimes charged in the indictment, other than perjury, was compiled from sources other than defendant's grand jury testimony. The principal thrust of the prosecution's case was supplied by Oliveri's testimony and tape recordings. This evidence was available to the State before defendant's grand jury appearance and was in no way derived from testimony elicited there.

VI. *Denial Of Defendant's Motion To Dismiss The Indictment.*

Prior to trial defendant moved to dismiss the indictment on the grounds that (1) although he was a target of grand jury investigation, the prosecutor had failed to inform him of the scope of its inquiry at his appearance before that body; (2) he did not execute a written waiver of immunity before testifying; (3) he was called as a witness before the grand jury when he was a target of its investigation, and (4) *N. J. S. A.* 2A:81–17.2a2 granted him, as a public employee, automatic use immunity in exchange for his grand jury testimony, and therefore he was immune from prosecution in any criminal proceeding based upon that testimony or evidence derived from it. Judge Kentz in the Law Division denied the motion, and in a written opinion, dated January 16, 1974, in pertinent part, held that since defendant had voluntarily and intelligently waived his privilege against self-incrimination by testifying before the grand jury, he could not claim immunity under *N. J. S. A.* 2A:81–17.2a2. The trial judge, in effect, held that the immunity granted by this statute was not self-executing. We disagree.

In *State v. Vinegra, supra* (decided after the ruling by the trial judge on defendant's motion to dismiss), we held that the immunity granted by *N. J. S. A.* 2A:81–17.2a2 was self-executing and required no assertion by the witness or confirmatory action by the court or the State. 134 *N. J. Super.* at 440. However, under the facts of the present case, the trial judge's failure to recognize the self-executing nature of the statutory grant does not necessitate dismissal of the indictment which, as demonstrated, was based on sufficient legitimate and independent proofs. *State v. Vinegra, supra.* Nor do we find sufficient reason at this time to reexamine our holding in the *Vinegra* case. See *United States v. Calandra,* 414 *U. S.* 338, 94 *S. Ct.* 613. 38 *L. Ed.* 2d 561 (1974) ; *United States v. Blue,* 384 *U. S.* 251, 86 *S. Ct.* 1416, 16 *L. Ed.* 2d 510 (1966).

Even if we were to agree with defendant that the substantive crimes charged in the indictment should have been dismissed, his conviction and concurrent sentence on the perjury charge still stands. See *State v. Mullen, supra; State v. Falco,* 60 *N. J.* 570 (1972); *State v. Cattaneo,* 123 *N. J. Super.* 167 (App. Div.), certif. den. 63 *N. J.* 324 (1973).

Finally, we find no merit in the defendant's claim that his constitutional rights were infringed because the State failed to adequately inform him of the scope of its investigation at the time he was called before the grand jury. Defendant admits that he was apprised generally of the subject matter of the investigation but claims his informant did not "pinpoint the Verle Cain matter." Our review of the record reveals that there was sufficient evidence to warrant the findings and conclusions of the trial judge that defendant was informed of the scope of the proceeding the day before his appearance before the grand jury. Moreover, sufficient evidence supports the conclusion that he understood his rights each time he appeared before the grand jury and that he voluntarily and knowingly testified. Therefore, we find no sound reason or justification for disturbing the trial judge's ruling. *State v. Johnson,* 42 *N. J.* 146, 161–162 (1964). Accordingly, we are satisfied that defendant's constitutional rights were not violated in the course of obtaining the indictment against him and we affirm the denial of defendant's motion to dismiss the indictment substantially for the reasons expressed by Judge Kentz in his letter opinion of January 16, 1974.

The judgments of conviction are affirmed.